IIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- X
BANCO CENTRAL DE VENEZUELA, a :
Venezuelan government organization, :
 :
       Plaintiff, :
 :
    v. :
 : Civil Action No. 1:15-cv-00965-GMS
DOLARTODAY, LLC, a Delaware limited :
liability company; GUSTAVO DIAZ VIVAS, :
an Alabama resident; IVAN DARIO :
LOZADA-SALAS, a Washington resident; :
and JOSE ENRIQUE ALTUVE LOZADA, a :
Florida resident, :
 :
       Defendants. :
----------------------------------------------------------X

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS AMENDED COMPLAINT WITH PREJUDICE**

OF COUNSEL:

Ricardo A. Gonzalez
Jared E. Dwyer
GREENBERG TRAURIG, P.A.
333 S. E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Tel.: (305)579-0500

*Attorneys for Defendants*

Dated: April 18, 2016

GREENBERG TRAURIG LLP
Gregory E. Stuhlman (No. 4765)
1007 North Orange Street
Suite 1200
Wilmington, Delaware 19801
Tel.: (302) 661-7000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

I. INTRODUCTION………………………………………………………………………..…1

II. LEGAL ARGUMENT……...………………………………………………..................2

    A. Plaintiff Fails to Establish Article III Standing........................................................2

        1. Plaintiff Mischaracterizes the Exhibits to Defendants'
           Opening Brief…………………………………………………………...............2

        2. Plaintiff Misapprehends the Legal Standard for a Pre-Answer
           Rule 12(b)(1)
           Motion…………………………………………………………………….....3

        3. Plaintiff Again Fails to Establish It Has Suffered An "Injury In
           Fact."...........................................................................................................4

        4. Plaintiff Fails to Establish "Fairly Traceable" Causation or the
           Likelihood Its Alleged Injuries Would Be Remedied by a
           Favorable Decision in This Case..................................................................7

    B. The Amended Complaint Fails to State a Claim under the RICO Act………..........8

        1. Plaintiff Insufficiently Pleads or Wholly Omits the Elements
           of a RICO Claim……………………………………………….....…..….8

        2. Plaintiff Has Not Suffered a RICO Injury and Fails to
           Establish RICO Causation……………………...…………………….....9

    C. The Amended Complaint Fails to State a Claim for False
       Advertising Under the Lanham Act; Venezuelan Civil Code or
       for Unjust Enrichment under Delaware Law……..…………………….........…10

III. CONCLUSION…………………………………………...….……………………….10

# **TABLE OF AUTHORITIES**

**CASES**

*Advanced Oral Technologies, L.L.C. v. Nutres Research, Inc.,*
    2011 WL 198029 (D. N.J. Jan. 20, 2011) ..................................................................9

*Ashcroft v.* Iqbal*,*
    556 U.S. 662, 129 S.Ct. 1937 (2009). .......................................................................6

*Astrazeneca Pharm. LP v. Apotex Corp.,*
    2010 WL 5376310 (D. Del. Dec. 22, 2010) ..............................................................3

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955 (2007) .......................................................................6

*Berardi v. Swanson Memorial Lodge No. 48*,
    920 F.2d 198 (3d Cir. 1990) ......................................................................................3

*Cohen v. Kurtzman*,
    45 F.Supp.2d 423 (D. N.J. 1999) ..............................................................................4

*Fowler v. UPMC Shadysie,,*
    578 F.3d 203 (3d Cir. 2009) ......................................................................................6

*In Re Avandia Mktg.*,
    804 F.3d 633 (3d Cir. 2015) ......................................................................................9

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997) ....................................................................................3

*In re Schering Plough Corp,*
    678 F.3d 235 (3d Cir. 2012) ......................................................................................6

*Mortensen v. First Fed. Savs. & Loan Ass'n*,
    549 F. 2d 884 (3d Cir. 1977) ....................................................................................3

*New Jersey Phys., Inc. v President of the United States*,
    653 F.3d 234 (3d Cir. 2011) ......................................................................................7

*Rolo v. City Investing Co. Liquidating Trust,*
    155 F.3d 644 (3d Cir. 1998) ......................................................................................9

*Simon v. Eastern Kentucky Welfare Rights Organization,*
    426 U.S. 26 96 S.Ct. 1917 (1976) .............................................................................8

*Triffin v. 611 Mach. Sales,*
    1992 WL 229870 (E.D. Pa. 1992) ........................................................................................ 9

*UD Technology Corp., C.A. v. Phenomenex, Inc.,*
    No. 05-842-GMS, 2007 WL 28295 (Jan. 4, 2007 D. Del.) ..................................................... 4

*Von Saher v. Norton Simon Museum of Art,*
    592 F.3d 954 (9th Cir. 2010) ............................................................................................ 3

*Warth v. Seldin,*
    422 U.S. 490  95 S.Ct. 2197 (1975) .................................................................................... 8

*Wilson v. City of Philadelphia,,*
    415 Fed. Appx.434 (3d Cir. 2011) ..................................................................................... 6

*Zavala v. Wal–Mart Stores, Inc.,*
    393 F.Supp.2d 295 (D.N.J. 2005) ...................................................................................... 9

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ 1, 3

Federal Rule of Civil Procedure 9(b) ..................................................................................... 8

# I. INTRODUCTION

Even after four months and two rounds of legal briefs, the Banco Central de Venezuela ("Plaintiff" or "Central Bank") still misapprehends its burden to establish Article III standing. In the opening paragraphs of its Answering Brief in Opposition to Defendants' Motion to Dismiss ("Answering Brief") (D.I. 55), Plaintiff baldly asserts it has Article III standing based on a hypothetical scenario of its own creation which, aside from being grounded in speculative inferences, is factually dissimilar to this case and unrelated to any actual case or court decision.[1] The law demands that Plaintiff make a far greater showing beyond mere hypotheticals, self-serving conjecture, and unsupported conclusions. Plaintiff has failed to carry its burden. Not only does the Amended Complaint fail to plead sufficient facts to plausibly establish the requisite elements of Article III standing, but Plaintiff failed to present any evidence whatsoever to refute Defendants' evidence attacking the "factual" bases for Plaintiff's purported standing in this case. In stark contrast, Defendants have carried their burden to show that the Amended Complaint fails to state a claim for relief under the RICO Act, Lanham Act, or Venezuelan Civil Code, or for unjust enrichment under Delaware law.

Unable to refute the well-founded arguments in Defendants' Opening Brief in Support of Motion to Dismiss Amended Complaint with Prejudice ("Opening Brief") (D.I. 32) with any credible evidence or sound legal reasoning, Plaintiff descends into distortions and mischaracterizations in its Answering Brief. Apparently, Plaintiff believes that if it can "muddy the waters" and sufficiently confuse the issues, then it might salvage the Amended Complaint from dismissal. As detailed below, no amount of confusion or misdirection can conceal the glaring deficiencies in the Amended Complaint. As evidenced by the legally-insufficient allegations in the

---

[1] Plaintiff cites *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286 (3d Cir. 2005) in footnote 1 of the Answering Brief, but that case is factually dissimilar. *Danvers* involved a class of auto dealers who sued Ford based on an "illegal" incentive program. Plaintiff's hypothetical involves a company that sued an analyst based on the publication of a false report about the company's stock.

1

Amended Complaint, Plaintiff *cannot* cure those deficiencies nor the myriad deficiencies identified in the Opening Brief. Any further amendment would be futile and unduly prejudicial to Defendants. The Court should dismiss the Amended Complaint with prejudice.

## II.  LEGAL ARGUMENT

A.  PLAINTIFF FAILS TO ESTABLISH ARTICLE III STANDING.

1.  **Plaintiff Mischaracterizes the Exhibits to Defendants' Opening Brief.**

Underscoring the lengths to which it will go to confuse the issues in this case, in its Answering Brief, Plaintiff asserts that all of the exhibits to Defendants' Opening Brief are "extrinsic 'evidence'" which may not be considered in ruling on Defendants' "facial" challenge to Plaintiff's Article III standing. As a preliminary matter, Defendants rely on Exhibits A, B.1, B.2, B.3, and C for their "facial" challenge to Plaintiff's standing. With the exception of Exhibit B.3, those documents are *explicitly* quoted, cited, or referenced in the Amended Complaint as follows:

| | | |
|---|---|---|
| **Exhibit A** D.I. 33-1 | Rueda, M., Meet the Venezuelan Rebel Whose Crime is Publishing Exchange Rates. | D.I. 28, ¶ 35 fn.13 (citing and referencing article); ¶¶ 36-37 (quoting article); ¶ 41 fn.24 (citing article); ¶ 46 (referencing article); ¶ 71 (cross-referencing article). |
| **Exhibit B.1** D.I. 52 | Content from DT Site re: calculation of DT Rate and disclosures regarding DT Rate. | D.I. 28, ¶¶ 1, 6, 8-10, 23-24, 35-37, 39, 41, 45-46, 48, 52-55, 57-59, 61-63, 67-71, 74-78, 86, 91, 105 (all citing, describing, or referencing DT Site); ¶¶ 42-44 (describing and inserting images from DT Site). |
| **Exhibit B.2** (D.I. 53) | Content from DT Facebook Site ("FB Site"), including hyperlinked content from DT Site. | D.I. 28, ¶¶ 1, 23, 52, 62, 70 (referencing FB Site); ¶ 45 (describing FB Site and displaying image of the specific content at D.I. 53). |
| **Exhibit C** (D.I. 33-3) | News articles and publications from leading media sources and financial analyst. | D.I. 28, p. 15, fn. 19 (CNN article); p. 16, fn. 20 (CNBC article), fn. 21 (Reuters article); p. 17, fn. 25 (Barclays Emerging Market research). |

The mere fact that Plaintiff does not attach copies of those documents to the Amended Complaint does not mean they cannot be considered by the Court in ruling on Defendants' "facial" challenge to Plaintiff's standing. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.

2

1997) (courts may consider documents referenced in or integral to a complaint on a Rule 12(b)(6) motion). "The rationale for this rule is that a plaintiff is not permitted to expressly rely upon documents in preparing his claims against a defendant, but then hide behind his complaint's characterization of those documents when the defendant offers the actual documents in his defense," just as the Plaintiff has done in this case. *Astrazeneca Pharm. LP v. Apotex Corp.*, 2010 WL 5376310, at *9 (D. Del. Dec. 22, 2010).

While Exhibit B.3 (D.I. 54), which consists of content from various third party websites that publish daily black market *bolivar*-to-dollar references on the Internet, is not cited or referenced in the Amended Complaint, it nevertheless may be "judicially noticed" by the Court—not for the truth of the matter asserted in the documents, but for the fact that entities other than DT currently publish daily, black market *bolivar*-to-dollar references which are available to the public on the Internet. *See Von Saher v. Norton Simon Museum of Art,* 592 F.3d 954, 960 (9th Cir. 2010) (taking "judicial notice" of Internet article as an indication that it was publicly available, not for the veracity of its contents). Thus, like the rest of the aforementioned exhibits, Exhibit B.3 may be considered by the Court in deciding Defendants' "factual" challenge to Plaintiff's standing.

2. **Plaintiff Misapprehends the Legal Standard for a Pre-Answer Rule 12(b)(1) Motion.**

Relying on *Mortensen v. First Fed. Savs. & Loan Ass'n*, 549 F. 2d 884 (3d Cir. 1977) and several cases that have followed it, Plaintiff contends that Defendants cannot assert a "factual" challenge to the Court's subject matter jurisdiction (and Plaintiff's Article III standing), because Defendants have not yet answered the Amended Complaint and/or discovery has commenced. What Plaintiff conveniently fails to mention is that approximately 13 years after *Mortensen* was decided, the Third Circuit Court of Appeals ("Third Circuit"), in *Berardi v. Swanson Memorial Lodge No. 48*, 920 F.2d 198 (3d Cir. 1990), was confronted with the same argument Plaintiff asserts in this case. Holding that the defendant could properly file a pre-answer "factual" challenge, the Third

3

Circuit stated:

> Although dictum in *Mortensen* seems to support [plaintiff's] argument, we are convinced that the argument is wrong. Long before *Mortensen*….[t]he Supreme Court held that the defendant's pre-answer motion reciting facts 'dehors the complaint' was 'an appropriate method of challenging the jurisdictional allegations of the complaint.'… This court has followed this approach both before and after *Mortensen*. Moreover, the requirements in Fed. R. Civ. P. 12(b) that a motion to dismiss for lack of subject matter jurisdiction must be made 'before the pleading if a further pleading is required' would make little sense if the factual basis for subject matter jurisdiction could not be contested until after an answer is filed.

*Id.* at 200.[2] This Court has followed *Berardi* and granted a pre-answer motion to dismiss which asserted a "factual" challenge to the plaintiff's standing. *See UD Technology Corp., C.A. v. Phenomenex, Inc.,* No. 05-842-GMS, 2007 WL 28295, at **5-6 (Jan. 4, 2007 D. Del.) (SLEET).

As the party with the burden of persuasion on the issues of standing and jurisdiction, Plaintiff was required to submit evidence to refute the exhibits to Defendants' Opening Brief "immediately after subject matter jurisdiction was challenged, i.e. when [Plaintiff] filed its opposition to [Defendants'] motion to dismiss."[3] Plaintiff's failure to submit any such evidence strongly suggests that it did not--because it cannot--refute the evidence submitted by Defendants.[4]

### 3. **Plaintiff Again Fails to Establish It Has Suffered An "Injury In Fact."**

Plaintiff egregiously mischaracterizes the arguments in Defendants' Opening Brief regarding Plaintiff's insufficient "injury in fact" allegations. Plaintiff contends that the "thrust of Defendants' entire argument" is that the primary injury alleged in the Amended Complaint is "price inflation." (D.I. 55, p. 6). Contrary to Plaintiff's assertions, and as demonstrated in the footnote below, Defendants specifically identify and reference the primary injury alleged in the Amended

---

[2] *Accord Charlton v. Comm. of IRS*, 611 Fed. Appx. 91, 94 (3d Cir. 2015); *CNA v. U.S.,* 535 F.3d 132, 145-46 (3d Cir. 2008); *Knauss v. U.S. Dept. of Justice,* No. 10–2636, 2010 WL 3986183, at *2 (E.D. Pa. Oct.7, 2010); *Wright v. N.J. Dept. of Educ.*, 115 F. Supp.3d 490, 496-497 (D. N.J. 2015).
[3] *UD Technology Corp.*, 2007 WL 28295, at *5-*6.
[4] *See Cohen v. Kurtzman*, 45 F.Supp.2d 423, 432-433 (D. N.J. 1999).

Complaint as the "devaluation of the bolivar" at least *twelve* (12) times in the Opening Brief.[5] To the extent Defendants mentioned "price inflation" in their Opening Brief, they did so metaphorically and to underscore that, while the Court generously gave Plaintiff an opportunity to cure its deficient "injury in fact" allegations, Plaintiff failed to do so and instead filed an Amended Complaint in which it merely substituted one legally-insufficient "injury in fact," *i.e.* "price inflation," with another one, *i.e.* "devaluation of the bolivar."

Nevertheless, in its Answering Brief, Plaintiff contends that "the Amended Complaint cured any deficiency [in the original complaint by] identifying the particular, concrete harms the Central Bank has suffered at Defendants' hands." (D.I. 55, p. 7). However, nowhere in the Answering Brief does Plaintiff actually identify any specific amendments or new or different allegation that could possibly have "cured" the deficiencies identified in the Dismissal Order. The reason is simple: there isn't any such new or different allegation in the Amended Complaint. Instead, Plaintiff relies on the same hackneyed injury allegations it relied upon in the original complaint, which this Court dismissed because it failed to plead a legally-cognizable "injury in fact."

Whereas, in the original complaint, Plaintiff's alleged injury as a result of Defendants' publication of the DT Rate was the "acceleration and exacerbation of price inflation in Venezuelan economy" and certain harms to the Central Bank that purportedly derived from, or were caused by, the "price inflation" (D.I. 1,.¶¶ 41-43), Plaintiff's alleged injury in the Amended Complaint is the alleged "devaluation of the bolivar" and certain harms to the Central Bank that purportedly derive from, or are caused by, the "devaluation" (D.I. 28, ¶¶ 16-18; 49-50). Thus, while the alleged primary injury in the Amended Complaint (*i.e.* "devaluation") is different from the alleged primary

---

[5] *See* D.I. 33, pp. 1-2 ("Plaintiff alleges that Defendants' publication of the DT Rate causes the **"devaluation of the bolivar"** which, in turn, produces the derivative harms to the Central Bank."); p. 2; pp. 2-3; p. 3; p. 10; pp. 11-12; p. 15; p. 16; p. 17 ("Plaintiff alleges that because of the so-called **"devaluation,"** it purportedly lost money on seigniorage, potential capital it could have received, and "reputational harm."); pp. 17-18; p. 19 ("Plaintiff's alleged "injury" is the **"devaluation" of the Venezuelan currency** and the derivative harms….").

injury in the original complaint (*i.e.* "price inflation"), the derivative harms purportedly caused or produced by the "devaluation"—*i.e.* diminished seigniorage, reduced capital investments, and reputational harm—are exactly the same.

The mere fact that Plaintiff characterizes the alleged derivative harms as "direct" injuries in its Answering Brief (*see, e.g.,* D.I. 55, pp. 1, 2, 3, 6, 7, 16, 18, 20), does not alter their derivative quality nor transform them into legally-cognizable "injuries in fact." Plaintiff's mischaracterization of these alleged harms as "direct injuries" is belied both by the allegations in the Amended Complaint (*see* D.I. 28, ¶ 21 (describing them as derivative); ¶49 (same)), as well as by the allegations in the Answering Brief itself (*see* D.I. 55, p. 10). Regardless of how the alleged derivative harms are described, in the final analysis, none of them constitutes an Article III "injury in fact." While it is true that, as Plaintiff alleges, even an "identifiable trifle of injury" may be sufficient to allege a "concrete" injury," for even a penny's worth of injury may suffice for an Article III injury-in-fact. But, a penny is "concrete," that is, it is "real" and "distinct" and palpable," while the Amended Complaint nowhere pleads facts to establish that any of the alleged derivative harms is a "real" or "distinct" or "palpable" injury.[6]

Every case relied upon by Plaintiff for its contention that it is not required to plead specific facts to support its injury-related claims was decided prior to the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009). (*See* D.I. 55, pp. 8-9). As a result, Plaintiff's arguments and case authorities are outdated and unpersuasive. As the Third Circuit declared in *Wilson v. City of Philadelphia*, 415 Fed. Appx. 434, 436 (3d Cir. 2011), "[*Twombly* and *Iqbal*] signify the progression from liberal pleading requirements to more exacting scrutiny." In *Wilson*, the Third Circuit held that,

---

[6] *See In re Schering Plough Corp*, 678 F.3d 235, 244 (3d Cir. 2012) (Plaintiff "'<u>must</u> assert facts that affirmatively and plausibly suggest" it has a right to jurisdiction.); *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009) ("Complaint has to 'show' such an entitlement with its facts.").

6

"[w]ith respect to 12(b)(1) motions," the plaintiff "'must assert facts that affirmatively and plausibly suggest that [it] has the right [it] claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right.'" *Id.* at 436.[7] When measured against this "more exacting" standard, the Amended Complaint simply does not pass muster. It contains few, if any, well-pleaded factual allegations regarding Plaintiff's alleged injuries and relies on unsupported conclusions, unwarranted inferences, and sheer speculation.

    **4.**     **Plaintiff Fails to Establish "Fairly Traceable" Causation or the Likelihood Its Alleged Injuries Would Be Remedied by a Favorable Decision in This Case.**

Plaintiff completely misses the mark on Article III "fairly traceable" causation. First, as demonstrated above, Defendants may properly rely on the exhibits to the Opening Brief to mount a "factual" challenge to Plaintiffs' Article III standing. In their Answering Brief, Plaintiff asserts that its alleged injuries are traceable to the Defendants because they "have been deliberately misrepresenting the bolívar-dollar exchange rate since at least May 2012 through the daily posting of the DT Rate" by knowingly publishing a false and misleading DT Rate." (D.I. 55, p. 20). To be sure, Exhibit B.1, the copies of content from the DT Site, completely disproves the lynchpin for Plaintiff's causation argument. As those documents show, the DT Site expressly discloses the origins of the information used to calculate the DT Rate ("publicly available" exchange rates which "[DT] obtain[s] directly from exchange houses [in Cucuta, Colombia]"); how the DT Rate is calculated (based on two exchange rates -- a bolivar to peso rate and peso to dollar rate); the "unofficial" character of the DT Rate; and the fact that it can be corroborated by anyone" by simply calling the exchange houses in Cucuta directly. In other words, the DT Rate is exactly what the DT Site says it is. It is not "phony," "false," or "misleading." Moreover, Plaintiff fails to plead a single example of a day when the average rate quoted by the exchange houses in Cucuta was, in fact, other

---

[7] *See New Jersey Phys., Inc. v President of the United States*, 653 F.3d 234, 239 (3d Cir. 2011) ("Even at the motion to dismiss stage, [i]t is a long-settled principle that standing cannot be inferred argumentatively from averments, but rather must affirmatively appear in the record.").

7

than what DT published it to be. In addition, as detailed in the Opening Brief, Exhibits A, B.1, B.2, and C fatally undermine Plaintiff's allegations that the purported "devaluation of the bolivar" and the derivative harms to the Central Bank are "fairly traceable" to the publication of the DT Rate.[8] Moreover, Exhibits B.3 and C fatally undermine Plaintiff's allegations that its alleged injuries would likely cease or be significantly curtailed if this was decided in Plaintiff's favor, and Defendants were enjoined from publishing the DT Rate.[9]

Contrary to Plaintiff's assertions, Defendants do not contend that Article III causation is the same as "proximate causation," or that Article III causation may never exist if a third party is involved anywhere along the chain of causation. Defendants' argument is simple, straightforward, and, more importantly, well-supported by Supreme Court precedents.[10] As the Supreme Court explained in *Warth v. Seldin*, 422 U.S. 490, 505, 95 S.Ct. 2197 (1975), the "indirectness of injury," while not necessarily fatal to standing, "may make it substantially more difficult to meet the minimum requirement of Article III: To establish that, in fact, the asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm."

Third, as described in the Opening Brief, the theory of causation alleged in the Amended Complaint involves far too many speculative inferences to connect Plaintiff's alleged injuries to Defendants' publication of the DT Rate. Plaintiff audaciously asserts that its theory of causation does not "require others to act." Plaintiff's argument is disingenuous, and it is directly contradicted by paragraphs 34, 38, 39, 47, 50 of the Amended Complaint and page 18 of the Answering Brief.

**B.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE RICO ACT.**

### 1. <ins>Plaintiff Insufficiently Pleads or Wholly Omits the Elements of a RICO Claim.</ins>

The applicable Rule 9(b) standard requires precision and a measure of substantiation with

---

[8] *See* D.I. 32, pp. 2-3; p. 12, fn.35; p. 13, fn. 41, fn. 42; p. 14, fn. 43; p. 15, fn. 45.
[9] *See* D.I. 32, pp. 3, 15
[10] *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 44, 96 S.Ct. 1917 (1976); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197 (1975).

8

fraud allegations – not broad allegations. *See* D.I. 32, pp. 15-16. Here, the Plaintiff simply points to general allegations and fails to list a single reported alleged false rate; a single wire; and fails to identify any individual that was allegedly defrauded by DT's alleged "false" exchange rate, when that individual was defrauded, or how such an individual was defrauded. Moreover, not only does Plaintiff not identify a single person that was defrauded, the Plaintiff fails to allege how this conduct defrauded the **Plaintiff** with any precision. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658-59 (3d Cir.1998).[11] The Defendants are left guessing about the who, what, when, and how of any fraud allegations.[12] That is insufficient.[13]

> 2. <u>**Plaintiff Has Not Suffered a RICO Injury and Fails to Establish RICO Causation.**</u>

Plaintiff's alleged injuries, diminished seigniorage and lost capital, are speculative. To the extent Plaintiff would receive these benefits, there was no guarantee. Indeed, Plaintiff points to no example of capital that it lost or identifies the decrease in its seigniorage. The reason is simple: It cannot. The alleged injuries are unquantifiable. RICO injury must be concrete, specific, and quantifiable; lost potential transactions are not enough. *Advanced Oral Technologies, L.L.C. v. Nutres Research, Inc.*, 2011 WL 198029, at *8 (D. N.J. Jan. 20, 2011).

Plaintiff's reliance on *In Re Avandia Mktg.*, 804 F.3d 633 (3d Cir. 2015) (pet. for cert. pending) does not help. The *Avandia* plaintiff's injury was that they **overpaid** for a product because of the alleged fraudulent conduct. *Id.*, at 640. Money was taken out of *Avandia* plaintiffs' pockets; they had suffered a real injury. Here, however, Plaintiff is claiming that they *could* have made some unknown, unquantifiable amount of money.

---

[11] *See also Triffin v. 611 Mach. Sales*, 1992 WL 229870, at *2-3 (E.D. Pa. 1992).
[12] The Plaintiff's attempt to circumvent its failure to identify the specific defendant that made the alleged false statement is unavailing as explained in the Defendants' Reply in Support of Motion to Dismiss the original complaint. See D.I. 26, p. 9. n.11.
[13] Moreover, all of the fraud allegations are based simply on "information and belief." That, however, is insufficient for fraud allegations. *Zavala v. Wal–Mart Stores, Inc.*, 393 F.Supp.2d 295, 314 (D.N.J. 2005) ("The mail and wire fraud predicates are pleaded on information and belief. As a general matter, such allegations are insufficient for purposes of Rule 9(b).")

Similarly, the Amended Complaint's RICO causation-related allegations are insufficient. With regard to seigniorage, there is simply no way that the Defendants' alleged conduct could have affected the seigniorage. The DT rate has nothing to do with seigniorage because the value of money is set by the Plaintiff. The causation claim fails for other reasons. More specifically, as amply explained in the Motion to Dismiss, the Plaintiff's RICO causation fails because the injury is not direct, is contingent, relies on independent acts of third parties, is easily explained by other causes, (including the falling price of oil, poor economic management, and investors avoidance of Venezuela because of its unstable political leadership), and would require apportionment of cause and damages amongst various and directly harmed victims. *See* D.I. 32, pp. 18-20.

Plaintiff nevertheless relies on *Avandia* claiming sufficient causation. In *Avandia*, however, the cause was direct. Indeed, the *Avandia* court explained that unlike cases where there is no causation, the *Avandia* plaintiffs suffered a harm that was not "derivative of harm suffered by a more immediate victim of the RICO activity." *Avandia*, 804 F.3d at 644. Here, however, any alleged harm is derivative. The purported victims of the "fraud" were the individuals that in fact relied on the DT rate, acted on the DT rate, and choose to accept it as real. Plaintiff, however, was not one of these individuals. Instead, Plaintiff allegedly suffered a harm that was derivative of the alleged fraud. Accordingly, the RICO claim should be dismissed.

C. **THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE LANHAM ACT; VENEZUELAN CIVIL CODE; OR FOR UNJUST ENRICHMENT.**

Nothing in Plaintiff's Answering Brief comes close to overcoming Defendants' arguments for the dismissal of Counts II, III, and IV under Rule 12(b)(6). Defendants refer the Court to their Opening Brief and respectfully request dismissal of those claims.

### III. CONCLUSION

For all of the foregoing reasons and those set forth in the Opening Brief, the Court should grant Defendants' motion and enter an Order dismissing the Amended Complaint with prejudice.

                                          GREENBERG TRAURIG, LLP

                                          */s/ Gregory E. Stuhlman*
                                          Gregory E. Stuhlman (#4765)
                                          1007 North Orange Street, Suite 1200
                                          Wilmington, Delaware 19801
                                          (302) 661-7000
                                          stuhlmang@gtlaw.com

                                          *Attorneys for Defendants*

OF COUNSEL:

Ricardo A. Gonzales
Jared E. Dwyer
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
(305) 579-0500

Dated: April 18, 2016